[No. H000384. Sixth Dist. Apr. 22. 1986.]

WHISPERING PINES MOBILE HOME PARK, LTD.,
Plaintiff and Appellant, v.
CITY OF SCOTTS VALLEY et al., Defendants and Respondents;
RICHARD DICKERMAN et al.,
Real Parties in Interest and Respondents.

## COUNSEL

Tuttle & Taylor, Joseph R. Austin, David B. Babbe and James L. Rankin, Jr., for Plaintiff and Appellant.

Raymond M. Haight for Defendants and Respondents.

Benjamin H. Scharf for Real Parties in Interest and Respondents.

## OPINION

**AGLIANO, P. J.**—This appeal challenges as insufficient a rent increase for plaintiff's (hereinafter petitioner) mobilehome park authorized by a rent control commission.

The Scotts Valley City Council in November 1980 adopted an ordinance establishing rent control for mobilehome parks within the city. A Mobile Home Park Rent Review Commission (the Commission) was created to review the reasonableness of proposed rent increases. Whispering Pines Mobile Home Park, Ltd., the owner of Vista Del Lago Mobile Home Park, sought to increase rent at the park and in August 1982 both the owner and some of the tenants petitioned the Commission to review rent increases to take effect October 1, 1982. A retroactive increase was sought for the 1981-1982 rental year applicable to about one-third of the tenants. A 12 percent increase as to these tenants was granted because the other two-thirds of the tenants had already accepted it.

This appeal does not question the increase approved for the 1981-1982 rental year, but only the increase approved for the 1982-1983 rental year. The Commission held hearings on September 29 and October 21, 1982. At the later hearing the Commission orally announced a 2 percent increase instead of the 16 percent sought by the landlord. The Commission prepared written findings to explain its decision dated November 24, 1982.

In March 1983, the landlord filed this petition for a writ of mandate to set aside the Commission's decision. A hearing was held on April 6, 1984, and the superior court denied the petition by a tentative decision dated August 1, 1984, which became the final statement of decision accompanying the judgment entered on October 16, 1984. The landlord appeals, claiming, inter alia, that the evidence fails to support the decision.

The Scotts Valley Municipal Code section 9.16.010 provides that the purpose of the ordinance is to protect against "unreasonable rent increases while at the same time recognizing the need of mobile home park owners to receive rental income sufficient to cover the increased costs of taxes, government services, repairs, maintenance, insurance, etc. plus a fair return on their investment."[1] Section 9.16.050(k) provides: "In evaluating the Base Rent increase proposed or effected by the mobile home park owner,

---

[1] Section 9.16.010 in full states: "There is presently within the City of Scotts Valley a shortage of spaces for the location of mobile homes. Because of the shortage there is a low vacancy rate, and rents have been for several years, and are presently, rising rapidly and causing concern amongst a substantial number of Scotts Valley residents. Because of the high cost of moving mobile homes, the potential for damage resulting therefrom, the requirements relating to the installation of mobile homes, including permits, landscaping and site preparation, the lack of alternative homesites for mobile home residents, and the substantial investment of mobile home owners in such homes, this Council finds and declares it necessary to protect the owners and occupiers of mobile homes from unreasonable rent increases while at the same time recognizing the need of mobile home park owners to receive rental income sufficient to cover the increased costs of taxes, government services, repairs, maintenance, insurance, etc. plus a fair return on their investment."

the Commission shall consider, but not be limited to, utility rates, property taxes, insurance, governmental assessments, costs of normal repair and maintenance, and costs attributable to incidental services, as well as a fair rate of return on investment. Any decreases in costs to the owner or in the downgrading, reduction or elimination of services to the park tenants shall also be considered."

A paramount question before the Commission in this case was: what is a fair rate of return on the landowner's investment? The Commission interpreted this phrase "to mean fair return based on the current fair market value of the park, . . ." The landlord favors this interpretation, while the City of Scotts Valley, joining with tenants who are real parties in interest on appeal, criticizes it. The landlord nevertheless challenges the ultimate conclusion of the Commission as to what rate of return on the investment is fair.

*Judicial Review*

Under the Scotts Valley Municipal Code, the Commission is required to hold a hearing and take evidence to determine what rent increase is reasonable. (§ 9.16.050.) No party disputes judicial review is proper under Code of Civil Procedure section 1094.5. Section 1094.5, subdivision (c), provides for alternative levels of trial court review of an administrative decision, either "independent judgment" when "authorized by law," or "in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in light of the whole record."

The trial court appears to have exercised both levels of review and, through each, arrived at the conclusion that the Commission's findings were supported by the evidence. No issue is raised whether the trial court exercised the proper scope of review.

Under either scope of review by the trial court the question for us in this case is basically the same: does substantial evidence support the rate set by the Commission? (Cf. *Campbell* v. *Residential Rent Stabilization & Arbitration Bd.* (1983) 142 Cal.App.3d 123, 126 [190 Cal.Rptr. 829].) As explained in *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892]: "In an administrative mandate proceeding in which the trial court has properly exercised its independent judgment on the evidence, the trial court's factual determinations are conclusive on appeal if they are supported by substantial evidence. (*Merrill* v. *Department of Motor Vehicles,* 71 Cal.2d 907, 915 . . . *Moran* v. *Board of Medical Ex-*

*aminers,* 32 Cal.2d 301, 308 . . . see Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 15.25, pp. 280-281.) If the proper scope of review in the trial court was whether the administrative decision was supported by substantial evidence, the function of the appellate court on appeal is the same as that of the trial court, that is, it reviews the administrative decision to determine whether it is supported by substantial evidence. (*Sunset Amusement Co.* v. *Board of Police Commissioners,* 7 Cal.3d 64, 76 . . . *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 149 [93 Cal.Rptr. 234, 481 P.2d 242]; *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d at pp. 915-916 [80 Cal.Rptr. 89, 458 P.2d 33]; see Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 15.26, p. 281.)"

The trial court apparently considered no evidence other than that before the Commission and contained in the administrative record. ■ Respondents' brief contains a number of factual assertions which find no support in the transcript of the evidence before the trial court. For example, reference is made to the Commission's findings regarding the landowner's rent increase application for the 1983-1984 year, and judicial notice is requested of the truth of a tenant's declaration offered in related litigation. Appellant properly objects to our consideration of these alleged facts outside the record and we disregard them. (*Lady* v. *Barrett* (1941) 43 Cal.App.2d 685, 686-687 [111 P.2d 702].)

### *The Commission's Findings*

The Commission approached the calculation of a fair rate of return essentially by adopting with modifications the methodology of the landowner's real estate appraisal expert, Robert Bell of Coldwell Banker. In order to determine the fair market value of the property, Mr. Bell examined the sales prices of comparable properties, and those prices were correlated with the gross incomes of the properties. This produced a gross income multiplier of 6.5.

Then the gross income of the subject property was ascertained. The appraiser and the Commission disagreed on the gross rent component of the mobilehome park's effective gross income. They agreed gross income consisted of gross rents plus utilities collections of $160,000, storage income of $3,000, and vending income of $1,300. The disagreement came in establishing effective gross rents. The appraiser recognized actual rents were $644,000, but determined they potentially could be $804,840, comparing other mobilehome parks. The appraiser then assumed there would be a 12 percent rent increase in the following year, or 9 percent for the remaining nine months. The appraiser figured effective gross projected income to be

$1,023,300. Applying the gross income multiplier, the fair market value of the property was estimated at $6,650,000.

The Commission disputed the appraiser's assumption that potential rents were higher than actual rents. The appraiser assumed potential rents would be higher in "an open market environment, free of rent control." The Commission pointed out the rent of $644,000 was reached over the years by the landowner prior to the imposition of rent control. Thus, the Commission utilized the actual rent figure as a component of effective gross income, otherwise adopting the appraiser's amounts. The Commission estimated the fair market value of the property to be no more than $5,253,950.

The next step in the calculations was to establish a gross rent which would produce a fair net return in light of the property's fair market value. Of course, operating expenses of the park were subtracted from the gross rent to determine net rent and net return. The property owner projected operating expenses for the rental year to be $305,000. The Commission took issue with some of the amounts included in this total. For example, the Commission questioned whether the landowner's extraordinary legal expenses sustained in challenging the rent control law should be passed on to the tenants. The Commission suggested three different revisions of projected operating expenses, $259,000, $227,000 or $197,000. The landowner does not challenge any of these versions on appeal.

Utilizing each of these projected operating expense figures in the alternative, the Commission calculated based on rents of $644,000 and a fair market value of $5,253,950, the net return percentages were 7.32, 7.53, or 8.50. The Commission concluded any one of these net returns was fair and reasonable for this type of investment, although 8.5 was on the high side of the spectrum. A 2 percent increase was nevertheless allowed, anticipating an increase in expenses. This yielded a gross rent of $657,000 and net return percentages of 7.61, 8.18, or 8.75.

### Evidence of a Fair Rate of Return

The landowner justifiably argues there is no evidence at all showing any net return less than 9 percent is reasonable and fair for this type of investment. The only evidence before the Commission on what would be a fair rate of return was presented by the landowner's expert, Ronald Grieson, a professor of economics. He compared expected return on a mobilehome park to that expected on electric utility stocks. The average return on the stocks was about 15 percent. He then adjusted the rate, taking into account the higher risk of investing in a mobilehome park, the lower need for capital

reinvestment, and other factors, such as the potential for appreciation of property. He concluded 9 percent was the absolute minimum rate of return which was fair or adequate.

The Commission had no questions for Dr. Grieson after he testified. Its 20 pages of findings do not acknowledge his testimony. The only explanation for finding a lesser rate of return fair and reasonable is the Commission's own opinions. Finding 81 states: "These returns are acceptable and fair under the present circumstances and conditions, considering the state of the economy, high interest rates, low sales activity in the real estate market, high unemployment, and the fact that real estate values in Scotts Valley have peaked and are presently declining, all constituting factors of common knowledge and experience."

Respondents and the court below justify the Commission's disregard of the landowner's expert on the basis of the experience and knowledge of members of the Commission in local real estate matters. The landowner properly cites *Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124 [181 Cal.Rptr. 732, 642 P.2d 792], in response. The board there contended its own expert knowledge constituted substantial evidence to justify its conclusion. The court recognized the board's expertise, but explained inexpert jurists were then called upon to review the board's decision by administrative mandate. (*Id.*, at pp. 138-139.) The court reasoned at page 139: "Yet the trial court is confined to the record of the agency hearing, except in certain cases when evidence was improperly excluded or not previously available with due diligence. (Code Civ. Proc., § 1094.5, subd. (e); [citation].) Therefore the agency record must provide as complete a basis for judicial review as due diligence makes feasible. [Fn. omitted.] It must include any technical matter necessary to enable a lay judge to determine whether the agency's decision has adequate support. [¶] To rule that the agency record must be complete enough to allow judicial review of technical questions imposes no unreasonable burden on the administrative process. . . ."

"We do not, of course, hold that agency adjudicators may not apply their expert opinions to decide issues of legislative fact. (See 3 Davis, Administrative Law Treatise (2d ed. 1980) § 15.2, p. 138.⁶)" (31 Cal.3d at p. 139.) Footnote 6 states: "Davis explains the long-recognized distinction between 'legislative' and 'adjudicative' facts. The latter are 'facts concerning immediate parties' and what happened to them; the former are facts 'utilized for informing a court's [or agency's] legislative judgment on questions of law and policy.' (*Id.*, § 15.1, p. 135.) Community standards of medical

practice, and whether particular type [*sic*] of conduct departs grossly from those standards, are 'legislative' facts. . . ." (*Ibid.*)

"A unique efficiency of many agencies is the professional competence they bring to matters delegated to them . . . . We think an agency factfinder may, for example, reject uncontradicted opinion testimony that his own expertise renders unpersuasive. [Citations.] A fortiori, the same expertise may govern even when the record contains no opinion evidence at all." (*Id.*, at pp. 139-140.)

"Yet due process requires, when in an adjudication an agency intends to rely on members' expertise to resolve legislative-fact issues, that it notify the parties and provide an opportunity for rebuttal . . . [¶] The agency's notification must be complete and specific enough to give an effective opportunity for rebuttal. It must also help build a record adequate for judicial review. If it meets those requirements we can see no prejudice to the parties.[8] [Fn. 8 states as follows:] Arguably the notification should include a brief statement explaining the opinion held by the adjudicative body, the reasons for the opinion, and the members' qualifications to hold it." (*Id.*, at p. 140.)

The court in *Franz, supra,* 31 Cal.3d 124, goes on to explain that some questions of common knowledge require no expertise, and "[o]nly where the professional significance of underlying facts seems beyond lay comprehension must the basis for the technical findings be shown and an opportunity for rebuttal given." (*Id.*, at p. 141.)

 We consider it a matter of expert opinion what rate of return on a mobilehome park is fair. The landowner's expert explained why 9 percent was the absolute minimum fair rate. The Commission reached a different result relying on factors which it described in its findings as "factors of common knowledge and experience." They included "the state of the economy, high interest rates, low sales activity in the real estate market, high unemployment," and the declining value of real estate in Scotts Valley. Assuming, arguendo, that these factors may be deemed legislative facts within the Supreme Court's contemplation in *Franz,* the landlord was not provided with notice and an opportunity to rebut them prior to the Commission's decision.[2] Further, unlike *Franz* where the Supreme Court acknowledged the expertise of members of the Medical Quality Assurance Board the record here reveals very little about the expert qualifications, if

---

[2] It is sometimes difficult to classify the type of facts involved in rate setting. (See 3 Davis, Administrative Law Treatise (2d ed. 1980) § 15.5. pp. 152-153 )

any, of members of the rent control commission. We note the only qualification for membership on the Commission is residence in Scotts Valley. (Scotts Valley Mun. Code, § 9.16.) If agency members possess sufficient qualifications the Commission is not precluded from taking official notice or relying on its expertise in making decisions. (*Cantrell* v. *Board of Supervisors* (1948) 87 Cal.App.2d 471, 477 [197 P.2d 218].)

Since there is no proper evidentiary basis for the Commission's conclusions on a fair rate of return, there is no basis for the trial court's conclusion the Commission's findings were supported by the evidence.

The trial court took the approach, urged by respondents below and on appeal, the Scotts Valley Code did not require the Commission to base a fair rate of return on the property's market value. It appeared instead to select the owner's investment on which to base a fair rate of return. The record unfortunately does not disclose any significant factual determinations relating to the owner's investment and the rate of return thereon to permit adequate review.

■ We agree, there is no constitutional requirement a property owner's return must be based on market value. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 679-682 [209 Cal.Rptr. 682, 693 P.2d 261], and cases there cited.) Nevertheless, the Commission adopted this approach to establishing a fair rate of return, although the method has been criticized as involving circular reasoning. (*Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 287-289 [195 Cal.Rptr. 825].) ■ The administrator's construction of a statute or ordinance is entitled to judicial deference, although it is ultimately a question for the court. (Cf. *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756-757 [151 P.2d 233, 151 A.L.R. 405].) We will uphold a correct administrative conclusion, although it was reached by erroneous legal reasoning. (*Morris* v. *Unemployment Ins. Appeals Bd.* (1973) 34 Cal.App.3d 1002, 1006 [110 Cal.Rptr. 630].) But whatever approach may be taken, we see no evidentiary support for the conclusion the net return on the landlord's investment is fair.

■ The landowner on appeal also challenges the Commission's gross rent calculations. Twelve appraisal treatises are cited to support the proposition: "It is a fundamental principle of appraisal practice that under income-based approaches to value, value is determined on the basis of projected market income rather than actual income." We would prefer to provide guidance on this question for further proceedings (Code Civ. Proc., § 43), but find ourselves unable to do so.

The landowner refers to these texts to establish standard appraisal practice, implicitly requesting judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) "The comment of the legislative committee to this section states that '[s]ources of "reasonably indisputable accuracy" include not only treatises, encyclopedias, almanacs, and the like, but also persons learned in the subject matter. This would not mean that reference works would be received in evidence or sent to the jury room. Their use would be limited to consultation by the judge and the parties for the purpose of determining whether or not to take judicial notice and determining the tenor of the matter to be noticed.'" (*People* v. *Archerd* (1970) 3 Cal.3d 615, 638 [91 Cal.Rptr. 397, 477 P.2d 421].)

The landowner does not refer to any part of the record to show any of these treatises was already judicially noticed. ■ An appellate court is permitted to take judicial notice of any matter specified in Evidence Code section 452, although the trial court did not take notice of it and it is not in the record, so long as a record is made of the matter and each party is afforded an opportunity to respond to it. (Evid. Code, § 459; *People* v. *Preslie* (1977) 70 Cal.App.3d 486, 492-495 [138 Cal.Rptr. 828].)

■ We decline to take judicial notice of this proposition, because we have not been provided with sufficient information to ensure the books cited are sources of reasonably indisputable accuracy. (Evid. Code, § 453.) "'If there is any doubt whatever either as to a fact itself or as to its being a matter of common knowledge, evidence should be required.'" (*San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 563-564 [104 Cal.Rptr. 733].) The Law Revision Commission comment explains in part: "If the party requesting that judicial notice be taken under Section 453 fails to provide the court with 'sufficient information,' the judge may decline to take judicial notice. . . . The court justifiably might require that the party requesting that judicial notice be taken provide expert testimony to clarify especially difficult problems."

Here when the Commission questioned the appraiser's gross rent calculations, the landowner's counsel did not produce his expert to respond, although he himself argued potential rent was the appropriate basis to figure fair market value. The expert did not expressly rely on any of the treatises now cited, and we have no way of knowing if they are indisputably accurate sources. Moreover, the proposition advanced by the appraiser does not seem irrefutable to us. There is some sense in taking rent control into account in establishing the fair market value of property subject to it. ■ The

matter of valuing rent-controlled property is a matter for expert opinion, however, and we cannot resolve it without sufficient information.

### Disposition

We reverse the judgment of the trial court and direct entry of a judgment granting petitioner a writ of mandate compelling the Commission to vacate its decision authorizing a 2 percent rent increase for the 1982-1983 rental year and to reconsider the question of what a fair return on investment would be. The Commission in its discretion may take additional evidence or rely on the existing evidence, consistent with this opinion.

Brauer, J., and O'Farrell, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.