[No. H001728. Sixth Dist. May 22, 1987.]

JAMES SIENKIEWICZ, Plaintiff and Appellant, v.
COUNTY OF SANTA CRUZ et al., Defendants and Respondents.

COUNSEL

Kelly J. Walker and Walker, Brock & Ambrose for Plaintiff and Appellant.

Dwight L. Herr, County Counsel, and Harry A. Oberhelman III, Assistant County Counsel, for Defendants and Respondents.

OPINION

AGLIANO, P. J.—James Sienkiewicz was dismissed as a detention officer by the Sheriff of Santa Cruz County in January 1985, and he seeks reinstatement with backpay. He appealed his dismissal, as well as an earlier instruction to stay away from work, to the County's Civil Service Commission (Commission), which upheld the sheriff's actions. This action commenced with his filing of a combined petition for writ of mandate and complaint for damages. We consider his appeal from the superior court's denial of his petition and dismissal of his complaint.[1] We will affirm the judgment.

■ A trial court must exercise its independent judgment when a permanent public employee seeks review of a civil service decision resulting in his termination, since it involves a fundamental right for purposes of Code of Civil Procedure section 1094.5. (*Rigsby* v. *Civil Service Com.* (1974) 39 Cal.App.3d 696, 700 [115 Cal.Rptr. 490]; *Salyer* v. *County of Los Angeles* (1974) 42 Cal.App.3d 866, 869 [116 Cal.Rptr. 27]; cf. *Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 661 [147 Cal.Rptr. 502].) When the trial court has exercised its independent judgment, on appeal we are concerned with whether substantial evidence supports the trial court's decision. (*Id.*, at p. 663; *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 156-157 [225 Cal.Rptr. 364].) In reviewing the evidence, we resolve conflicts and draw inferences in support of the judgment. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53]; *Farmer* v. *City of Inglewood* (1982) 134 Cal.App.3d 130, 136 [185 Cal.Rptr. 9].)

II

*Facts*

Appellant had been employed as a detention officer for about two and one-half years when on August 2, 1983, he suffered serious injuries to his

[1] We need not decide whether the Sheriff and the County of Santa Cruz are proper parties in this action. The validity of the judgment does not depend on whether the trial court erred in dismissing them.

face and jaw in an off-the-job motorcycle accident. He returned to work in December 1983, but, as his injuries were still healing, he was under orders by his doctor and his employer to avoid the possibility of being struck in the face. His employer assigned him "light duty" which minimized his contact with arrestees.

Detention officers are responsible for maintaining arrestees in custody once they are delivered by patrol officers. They receive the arrestees, identify them and the charges against them, hold their property, lead them about the detention facility, and otherwise control and supervise them. There is always risk of physical altercation. A detention officer in charge of an arrestee should minimize this risk by manifesting a commanding attitude.

Most watch commanders prefer to rotate the detention officers regularly through each of the duty stations. When appellant was injured, however, he was taken out of the rotation and assigned mainly to Central Control for nine months. Central Control is a communications center. It monitors the facility by cameras. It also opens doors by remote control. A Central Control officer is insulated from arrestee inmates by a locked door, except when en route to the locked office.

On August 30, 1984, the doctor treating appellant's face and jaw injuries cleared him to resume full duty. Appellant revealed to Sgt. Robert Shipp, his watch commander, reservations about assuming full duty because he feared being hit in the face. Shipp told appellant this presented a serious problem, since part of the job was to control the fear of a physical confrontation, so appellant should consider during his scheduled week vacation whether he could do the job or not. Appellant understood Shipp as saying his choices were: assume full duty, quit, or be fired.

When appellant returned to work after his vacation, Shipp spoke to him further about working in an intake area. Appellant expressed the same reservations about engaging in an altercation or backing up a fellow officer so engaged. Shipp responded, he could go home, but that it might be the first step to dismissal. Faced with this choice, appellant promised to do the job.

Appellant's counsel then wrote to Shipp on September 19, 1984, stating in part: "Due to the psychological trauma associated with [his] facial injuries, [appellant] does not feel comfortable working in an area where the possibility of physical contact with the inmates is present. . . . [¶] [Appellant] is not refusing to work in a position that requires inmate contact, but is making known to your office the fact that he maintains a substantial fear of physical confrontation . . . . [¶] . . . This fear is not only for his own

physical safety, but also for the safety of the other officers working with him. [¶] I would suggest maintaining [appellant] in the position he has held for the last six months until the end of the year. At the end of the year a reevaluation of [appellant's] mental and physical progress could be made to determine whether the position should be made permanent."

On September 24, 1984, Shipp responded to this letter with a memorandum informing appellant that since he had been medically released, he would be placed into a regular rotation. On September 30, 1984, Shipp found appellant's job performance adequate on a quarterly personnel evaluation.

Shipp discussed appellant's letter with Detention Bureau Chief Alison Stevens. Their conclusions were conveyed to Sheriff Alfred Noren, who wrote appellant a memorandum dated October 2, 1984, which responded to his letter in part: "As the letter from your attorney raises serious concerns with respect to your safety and to the safety of your fellow employees, we cannot allow you to work in an assignment involving contact with inmates. [¶] As you are aware, the Detention Bureau has only a limited ability to place employees in positions which do not entail inmate contact, and employees must have the ability to move between assignments to meet workload and staffing demands. . . . The staffing authorized for the Detention Bureau certainly does not permit the creation of a permanent assignment which does not entail contact with inmates. It is thus not possible to place you in an assignment which does not involve inmate contact. [¶] . . . [Y]ou should remain away from work until you can provide evidence that your fears do not represent a threat to your safety or the safety of fellow employees. You may use paid leave to your credit and then request leave of absence without pay until such time as you can provide this office with evidence that your presence at your normal work assignment would not endanger your safety or the safety of your fellow employees."

On October 8 appellant through his union filed an appeal of the sheriff's October 2 action. The Commission held a hearing on December 13, 1984. Appellant submitted a written psychiatric evaluation which diagnosed him as suffering from post-traumatic stress syndrome and recommended his placement on light duty for three to six more months, at which time he probably would be sufficiently recovered to assume full duty. At the hearing the parties debated whether the sheriff's October 2 action was disciplinary so as to invoke the Commission's jurisdiction. The Commission's hearing was continued.

On December 26, 1984, the sheriff, after consulting with County Counsel, notified appellant of his dismissal as of January 11, 1985 for the following

reasons: (1) appellant's psychological trauma condition posed a "significant safety hazard" to himself and fellow employees and rendered him unable to perform the duties of a detention officer, (2) his "condition could exist for as long as an additional six months and may prove to be an indefinite condition," (3) he insisted at the December 13 hearing on immediately returning from his leave of absence, (4) even a return to the limited duty of Central Control could not guarantee lack of inmate contact during an emergency.

This action was also considered by the Commission at its continued hearing on January 23, 1985. Appellant, Shipp, Stevens, and Noren presented the above information to the Commission in their testimony. They also testified to a policy of accommodating injured officers with appropriate light duty assignments with limited inmate contact. One example was Jocelyn Joddar, who had a blood clot in his shoulder which could cause serious injury if dislodged by a blow. His condition was expected to improve within six months to a year. He had been assigned for six or seven months to serve as logistics officer in charge of supplies, since he had a special aptitude for such work. Another example was Crystal Stockton, who was physically unable to work the 12-hour shifts required of rotating officers after some 15 years with the Detention Bureau. She was assigned to an eight-hour shift as quality control officer in charge of keeping track of the computerized court records of the inmates' cases. Neither assignment was permanent, however.

At the close of the hearing, the Commission upheld the actions of the sheriff, although determining that appellant's dismissal took effect on January 14, 1985.

Appellant filed this action in August 1985. At a hearing on October 18, 1985, based on the evidence before the Commission, the superior court denied appellant's petition and dismissed his complaint, with judgment entered and a statement of decision filed on January 8, 1986.

### III

*Discussion*

Appellant first contends he was denied due process because he was not given a hearing prior to the sheriff's action of October 2, 1984, instructing him to remain away from work, which he claims was a disciplinary or punitive indefinite suspension. He relies on *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774], as entitling him "before the discipline becomes effective" to "notice of the proposed action,

the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."

We will assume a leave of absence imposed by the employer is the equivalent of a suspension. (Cf. *Keithley* v. *Civil Service Bd.* (1970) 11 Cal.App.3d 443, 449 [89 Cal.Rptr. 809].) But assuming, arguendo, the trial court and the Commission erred in determining the sheriff's action was not punitive or disciplinary, it does not follow that appellant was denied due process. When a public employee is subject to a short-term suspension, due process requires only that the employee be afforded a right to respond "either during the suspension or within a reasonable time thereafter." (*Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 564 [150 Cal.Rptr. 129, 586 P.2d 162]—five-day suspensions; see *Taylor* v. *State Personnel Bd.* (1980) 101 Cal.App.3d 498, 504-505 [161 Cal.Rptr. 677]— 10-day suspensions; *Murden* v. *County of Sacramento* (1984) 160 Cal.App.3d 302, 309-310 [206 Cal.Rptr. 699]—temporary employee suspended pending investigation into misconduct charges.) Appellant was given the requisite hearing by way of his administrative appeal subsequent to his "suspension." (Gov. Code, § 3304, subd. (b).) We regard appellant's alleged suspension as short term, though no term was specified, because it was within his power to end it quickly by showing he had overcome his fear.

Appellant raises a number of arguments attacking his suspension and termination as arbitrary and groundless. ■ He contends the sheriff should have obtained additional medical information before suspending him. But appellant supplies no authority supporting this argument. He invokes Government Code section 19253.5, but this section applies to state civil service and not county civil service. Even assuming a parallel county rule (which has not been cited to us), section 19253.5, subdivision (e), states: "The appointing power may demote, transfer, or terminate an employee under this section without requiring the employee to submit to a medical examination, when the appointing power relies upon a written statement submitted to the appointing power by the employee as to the employee's condition or upon medical reports submitted to the appointing power by the employee." Appellant's counsel's letter of September 19, 1984, furnished a sufficient ground for suspension of appellant until such time as he could fulfill his duties without posing a danger to himself or coworkers.

■ Appellant also contends his employer has made an arbitrary distinction between physical and psychological injuries. We agree in the abstract that an employer should treat an employee's psychological trauma as a disability similar to physical trauma. (Cf. *Wallace* v. *State Personnel Board* (1959) 168 Cal.App.2d 543, 547 [336 P.2d 223].) However, it is appropriate

to distinguish between disabilities which do or do not render an employee unfit for his or her position. Nothing in the California Fair Employment and Housing Act prohibits an employer from "the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others." (Gov. Code, § 12940, subd. (a)(2).) It is self-evident that a public employer may require an employee to meet physical or mental standards reasonably related to the duties required by the job and the health and safety of the employee or others. (Cf. *Johnson* v. *Civil Service Com.* (1984) 153 Cal.App.3d 585, 588 [200 Cal.Rptr. 289].)

As we understand it, appellant's employer was concerned with the particular type of psychological disability claimed by appellant. It is reasonable to require an officer in a custodial facility to be mentally prepared to physically subdue a defiant arrestee. Indeed, appellant's whole premise is he was psychologically unfit to perform regular duty involving inmate contact without a threat of danger to himself or coworkers.

■ Appellant's essential contention is that the sheriff was obligated to assist him "in overcoming his psychological disability." Without authority, he insists the sheriff was required to further accommodate his recovery by continuing his light-duty assignment in Central Control or another position with limited inmate contact until such time as his psychological wounds healed. "Although a permanent employee's right to continued employment is generally regarded as fundamental and vested, an employee enjoys no similar right to continuation in a particular job assignment." (*Howell* v. *County of San Bernardino* (1983) 149 Cal.App.3d 200, 205 [196 Cal.Rptr. 746].) An employer must have some discretion in determining how many light-duty assignments its operation can tolerate, and it is not arbitrary to give those assignments to more experienced or better qualified employees. (*Dobbins* v. *City of Los Angeles* (1970) 11 Cal.App.3d 302, 305-306 [89 Cal.Rptr. 758].) We will not substitute our judgment in place of the employer's when reasonable minds can differ on how long a disabled employee should be accommodated.

■ Appellant contends the Commission had no authority to terminate him, but he misconstrues the ordinances governing the Commission's authority. He relies on a section stating: "The rules prescribed and enforced by the Civil Service Commission shall provide for the separation from the Classified Service of employees through layoff, suspension, or dismissal, and for demotions or leave of absence for incapacity or inability to perform required duties." He contends the final phrase limits the County's options

to either demotion or granting a leave of absence when an employee is incapacitated or unable to perform.

We interpret this phrase as illustrating, rather than limiting, which situations the Commission's rules shall address. Confirmation of this construction comes from the Commission's Civil Service Rule which provides as grounds for discharge, demotion or suspension, "[i]ncompetency," "[p]hysical or mental disability," and others. Although construction of the ordinance is ultimately a question for the court, we defer to the administrator's reasonable construction. (See *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley, supra,* 180 Cal.App.3d 152, 161.)

█ Finally, appellant contends the penalty of discharge was too severe a solution for the problem. We will not substitute our discretion for that of the administrative agency in fixing the degree of the penalty so long as the corrective is reasonably appropriate to the danger to public service. (*Martin* v. *State Personnel Bd.* (1982) 132 Cal.App.3d 460, 464 [183 Cal.Rptr. 295] and cases there cited.) "It is established . . . that physical disability constitutes sufficient cause for removal of a fireman or policeman." (*Dobbins* v. *City of Los Angeles, supra,* 11 Cal.App.3d 302, 305.) Having already acknowledged that mental disability can be as incapacitating to an employee as physical, we must conclude that appellant's particular fear of physical violence did render him unfit for the position of detention officer.

IV

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.