[No. F011791. Fifth Dist. Nov. 30, 1990.]

THOMAS PHILLIPS et al., Plaintiffs and Respondents, v. COUNTY OF FRESNO et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

1242

COUNSEL

McCormick, Barstow, Sheppard, Wayte & Carruth, Michael G. Woods and David H. Bent for Defendants and Appellants.

Bennett & Sharpe, Thomas M. Sharpe and Laura J. Bakker for Plaintiffs and Respondents.

OPINION

STONE (W. A.), Acting P. J.—Appellants, County of Fresno, Steve Magarian, Sheriff of the County of Fresno, and Gary Peterson, Auditor/Controller of the County of Fresno (collectively referred to as County) appeal from a judgment directing issuance of a peremptory writ of mandate ordering the County to reinstate respondent, Thomas Phillips, retroactively to his position as a deputy sheriff and to pay Phillips wages and benefits calculated from the date of reinstatement. The issues on appeal concern the propriety of relief by way of mandamus, the timeliness of the action and the application of Government Code[1] section 31725[2] to the facts.

## STATEMENT OF THE FACTS AND PROCEEDINGS

Phillips first began employment with the County of Fresno as a deputy sheriff in August 1979. In November 1979, Phillips shot and killed a man

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] Section 31725 provides:

"Permanent incapacity for the performance of duty shall in all cases be determined by the board.

"If the medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member's application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days of the mailing of such notice. If such petition is not filed or the court enters judgment denying the writ, whether on the petition of the employer or the member, and the employer has dismissed the member for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal."

during the course of a shootout. The administrative investigation concluded the shooting was justified, and Phillips returned to work at the conclusion of his mandatory administrative leave of absence. In December 1980 Phillips injured his neck during a training exercise and was placed on leave of absence with pay for one month. Soon after returning to work, he injured his knee when struck by an automobile while on duty. He had knee surgery in April 1981. He requested and received a medical leave of absence without pay in July 1981. As a result of his neck injury, he underwent surgery on his spine in September 1981.

Upon the advice of his doctors, Phillips submitted an application for service-connected disability retirement in December 1981. He based his claim for permanent disability upon his physical, service-related injuries and posttraumatic stress disorder resulting from the shooting incident. Both Phillips and his doctors were of the opinion he was permanently physically and emotionally incapable of performing the duties of a deputy sheriff.

Prior to the hearing before the Board of Retirement of Fresno County Employees' Retirement Association (Retirement Board), Phillips was examined by several physicians appointed by the County to assess his disability. The County's physicians and several of Phillips's treating physicians testified at the hearing. On December 7, 1983, the Retirement Board issued its decision denying Phillips's application for disability retirement. It determined he had greatly exaggerated his physical and emotional problems and was "not substantially incapacitated from the performance of his usual job duties, either from a physical or psychiatric standpoint."

Soon after learning of the Retirement Board's decision, Phillips met with Sheriff McKinney, who was "astounded" Phillips had not been granted disability retirement. McKinney told Phillips his injuries created too many liabilities to allow him to return to active duty and a doctor's release would be a necessary precondition to his reinstatement. Phillips advised McKinney he did not believe his doctors would release him to return to work. McKinney told Phillips he would see what he could do to petition the Retirement Board for a rehearing and would testify on Phillips's behalf. McKinney contacted either the Fresno County Counsel (County Counsel) or someone from the Retirement Board, who told him he had no legal standing to petition for a rehearing and such a request would have to be made by Phillips.

Phillips filed a petition for rehearing in which he requested the Retirement Board to reconsider its position in light of newly obtained evidence that he would not be allowed to return to work because of his injuries. On behalf of the Retirement Board, the County Counsel opposed the petition

on the ground the sheriff's decision did not require the Retirement Board to reconsider its findings since the sheriff had a right to petition for relief from the Board's decision under section 31725. Alternatively, the County Counsel argued Phillips could compel the sheriff to reinstate him by filing a mandamus proceeding in superior court. The Retirement Board denied Phillips's petition for rehearing on February 1, 1984.

Thereafter, Phillips's attorney sent McKinney a letter on his client's behalf, dated February 3, 1984, requesting reinstatement to active duty in light of the finding of the Retirement Board that Phillips was capable of performing his usual and customary duties. The letter stated further:

"So that there will not be any misunderstanding regarding our position in this regard, we want to verify that Mr. Phillips continues to be of the opinion that he is not capable of performing his usual and customary duties and his treating psychologist, Dr. Pontecorvo, has also indicated that Mr. Phillips is not capable of returning back to his job duties. In regards to Dr. Pontecorvo's opinion, we attach for your reference a copy of his January 21, 1984 report. Nevertheless, the Retirement Board decision has placed Mr. Phillips in a position where he does not have any choice other than to request that he be allowed to return back to work.

"Please advise as to when you will allow Mr. Phillips to report to duty."

Dr. Pontecorvo's report indicated Phillips suffered from emotional and psychological problems which rendered him incapable of performing law enforcement duties.

Phillips and Sheriff McKinney met again soon after McKinney received the letter. McKinney advised Phillips he would not be returned to active duty until he had been examined and released by a Fresno County medical examiner.

By letter dated February 14, 1984, the County Counsel, on behalf of the sheriff, responded to Phillips's request to be reinstated. The County Counsel explained Phillips would not be reinstated until his therapist released him to return to work. The letter provided further:

"[T]here really is no inconsistency between the above action by the Sheriff and the Retirement Board's finding that Mr. Phillips is not permanently disabled under the retirement law. These positions may be reconciled, because the Retirement Board's finding is that Mr. Phillips is not permanently disabled within the meaning of the retirement law so as to

qualify for the lifetime disability benefit. Nevertheless, Mr. Phillips' *present* condition may still make it inadvisable for him to return to work."

Neither Phillips nor the County sought judicial review of the decision of the Retirement Board. Phillips continued on unpaid medical leave of absence until January 26, 1987, at which time he returned to active duty pursuant to an order from the new sheriff, Steve Magarian. The county medical examiner did not examine Phillips, and Magarian did not require Phillips to provide a physician's release.

During the period of time between his request for reinstatement in February 1984 and his actual reinstatement in January 1987, Phillips completed several forms requesting medical leave of absence. According to Phillips, he indicated on the first such form that he in fact did not want further medical leave and that he wished to return to work. He received no response to this communication. The County prepared two subsequent medical leave forms without Phillips's knowledge, authorization or signature. Phillips signed two final medical leave forms after he was told he would be terminated from county employment if he did not complete the forms.

Phillips did not engage in a more active pursuit of reinstatement because he did not believe he was physically and emotionally capable of performing the duties of a deputy sheriff. From February 1984 until January 1987 he received no salary, vacation credits, or annual leave credits, and retirement contributions were not made on his behalf by the County.

Phillips, with whom the Fresno Deputy Sheriffs' Association joined, filed a petition for writ of mandate on March 2, 1987, requesting that the trial court order the County to reinstate him to a position of deputy sheriff retroactively "as of the date [he] was relieved of his duties and status as a paid employee; . . ." Phillips relied on section 31725 and argued the County had an obligation to reinstate him once it determined it would not challenge the decision of the Retirement Board denying his application for disability retirement. Accordingly, he claimed retroactive reinstatement with backpay and benefits.

The County opposed the petition on the bases that (1) the statute of limitations barred the action; (2) mandamus would not lie to compel Phillips's reinstatement since he had never been dismissed from county employment; (3) mandamus would not lie to compel a discretionary act, i.e., to compel the sheriff to reinstate Phillips to active duty when the sheriff felt he was a threat to safety; and (4) section 31725 did not apply to these circumstances.

In its intended decision the trial court found the sheriff's refusal to reinstate Phillips after his February 3, 1984, request for reinstatement meant Phillips had been dismissed from employment within the meaning of section 31725 and that section 31725 created a legal duty to reinstate Phillips once the Retirement Board denied his application for retirement disability. The court issued a peremptory writ of mandate directing the County to reinstate Phillips to his position effective February 3, 1984, and to calculate and pay him all wages and benefits he would have received during the period between February 3, 1984, and January 26, 1987, less all wages and other benefits he received during the period, not including workers' compensation, medical expenses or any permanent disability payments.

DISCUSSION

PART I

*Propriety of Mandamus*

■ Citing the well-established rule that mandamus will not lie when there is a plain, speedy, and adequate remedy at law (Code Civ. Proc., § 1086), the County contends Phillips has such a remedy for backpay and benefits. According to the County, although Phillips couches his petition in terms of a request for reinstatement, he was reinstated on January 26, 1987, and the only actual relief to which he might be entitled is damages in the form of backpay and benefits. We disagree.

Issues concerning monetary damages for backpay are not the only issues remaining after Phillips's reinstatement on January 26, 1987. If Phillips is correct in his interpretation of section 31725, he would be entitled not only to unpaid wages and benefits since February 3, 1984, but also to retroactive reinstatement in order to recapture his status as a deputy with continuous years of service since the date of his initial employment. The three "lost" years interrupted his seniority status and the benefits derived from it. The action is not one simply for damages for breach of contract; if Phillips prevails, the County's obligation would be more than the payment of money for back wages.

■ Additionally, the County alleges mandamus is not a proper remedy because the sheriff's decision not to reinstate Phillips after the Retirement Board declined to award disability retirement was discretionary, not ministerial. Mandamus is not available to correct discretionary decisions. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281].) In making this argument, the County relies upon

section 12940, subdivision (a)(2), which is part of the Fair Employment and Housing Act. Section 12940, subdivision (a)(2) provides:

"(a) . . . [¶] (2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others." According to the County, the trial court's interpretation of section 31725 interferes with the Sheriff's exercise of discretion.

Phillips contends the Retirement Board found he met the minimum qualifications of a deputy sheriff and McKinney had no medical expertise from which to conclude to the contrary. He asserts further if McKinney disagreed with the Retirement Board's decision and felt Phillips was a danger to himself and others, the County was required under section 31725 to seek a writ of mandate challenging the Board's decision. Otherwise, pursuant to the plain language of section 31725, McKinney had no choice but to reinstate him.

With respect to section 12940, subdivision (a)(2), Phillips contends it applies only to "medical conditions" as the term is defined in section 12926, subdivision (f). Section 12926 provides in pertinent part:

"As used in this part in connection with unlawful practices, unless a different meaning clearly appears from the context:

". . . . . . . . . . . . . . . . . .

"(f) 'Medical condition' means any health impairment related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical evidence."

Phillips's interpretation of section 12940, subdivision (a)(2) to apply only to cancer-related or associated conditions is an unduly narrow construction of the discretion vested in employers to determine whether an employee meets bona fide occupational qualification. As stated in *Sienkiewicz* v. *County of Santa Cruz* (1987) 195 Cal.App.3d 134, 142 [240 Cal.Rptr. 451]:

"It is self-evident that a public employer may require an employee to meet physical or mental standards reasonably related to the duties required by the job and the health and safety of the employee or others."

The parties have cited no provision in the Fair Employment and Housing Act which would prohibit Sheriff McKinney from refusing to hire or from discharging Phillips because his medical condition would endanger his health and safety or the health and safety of others. The issue, however, is not whether the County has violated the Fair Employment and Housing Act. Nor is the issue whether McKinney had the discretion to determine whether Phillips was physically and mentally qualified to perform the duties required by the job of deputy sheriff. The issue is whether section 31725 governs the procedures to be followed by the County because of the conflicting determinations of the Retirement Board and the sheriff.

This action is properly before the court.

## PART II

### Statute of Limitations

Both parties agree the obligation Phillips seeks to enforce is created by statute, which, pursuant to Code of Civil Procedure section 338, subdivision (a), is governed by a three-year statute of limitations.

The County contends Phillips's cause of action accrued, and therefore the statute of limitations began to run, when he first had a right to demand reinstatement under section 31725—when the Retirement Board denied his application for rehearing on February 1, 1984—and his action is untimely since he filed it March 2, 1987.

Phillips asserts his cause of action did not accrue until the County's obligation to reinstate him under section 31725 became absolute. Pursuant to section 31725, the County had 30 days within which to seek judicial review of the Retirement Board's decision after the denial of Phillips's application. Accordingly, Phillips contends, the County had no obligation to reinstate him until after its time to seek relief from the Retirement Board's decision expired on March 2, 1984, and his action was therefore timely.

Resolution of the issue requires us to determine when the cause of action accrued and, if it accrued on February 1, 1984, whether the 30-day time to petition for relief tolled the limitations period.

█ In cases involving employee actions against pension boards challenging the denial of pension benefits, courts have held the cause of action accrues when the employee first has the power to request or demand a pension. (*Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]; *Phillis* v. *City of Santa Barbara* (1964) 229 Cal.App.2d 45, 54 [40 Cal.Rptr. 27].) By analogy, the County argues a cause of action for reinstatement under section 31725 accrues when the employee first has the right to request or demand reinstatement.

Although the cause of action accrues in pension cases when the employee first has the power to demand a pension, the limitations period is tolled or suspended during the period of time in which the claim is under consideration by the pension board. (*Dillon* v. *Board of Pension Commrs., supra,* 18 Cal.2d at p. 431; *Skaggs* v. *City of Los Angeles* (1954) 43 Cal.2d 497, 500 [275 P.2d 9].) The employee is unable to enforce the claimed statutory right to a pension by way of mandamus until the pension board fails to comply with the claimed statutory obligation. (See *Dillon* v. *Board of Commrs., supra,* 18 Cal.2d at p. 431.)[3]

█ If we analogize the facts before us with the cited pension cases, and the employer, i.e., the sheriff's department, is substituted in place of the pension board, the running of the statute of limitations was suspended during the 30-day statutory period within which the sheriff had to decide whether to reinstate Phillips or to challenge the Retirement Board's decision. In other words, even had Phillips's cause of action accrued immediately upon denial of his petition for rehearing, he could not have enforced his claimed right to reinstatement by way of mandamus because the sheriff had no statutory obligation to reinstate him at that time.

*Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97] provides a similar approach. Lerner's teaching credential had been revoked by the State Board of Education on the basis of a prior sex offense. The city board of education thereafter terminated Lerner's employment. It was subsequently determined in a separate proceeding that the revocation of his credential had been invalid. The state board voluntarily restored his credential, but the city board refused Lerner's request for reinstatement to a teaching position. The *Lerner* court determined the point in time at which the statute of limitations commenced for Lerner's cause of action for reinstatement was when the State Board of Education restored Lerner's credential because it was at that point the city board became obligated to reinstate him. (*Id.* at pp. 390-391; see also *Monroe* v.

---

[3] A writ of mandate lies only when the petitioner shows the respondent failed to act upon a clear, ministerial duty to do so, and the petitioner shows a clear right to such performance. (*Quirk* v. *Board of Education* (1988) 199 Cal.App.3d 729, 733 [244 Cal.Rptr. 924].)

*Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 409 [99 Cal.Rptr. 129, 491 P.2d 1105].)

In Phillips's case, the sheriff's department had no obligation to reinstate Phillips when the Retirement Board denied his petition for rehearing. The sheriff had 30 days within which to challenge the Board's decision. The obligation of the sheriff did not arise until those 30 days had expired.

■ The process required by section 31725 is described in *Harmon v. Board of Retirement* (1976) 62 Cal.App.3d 689 [133 Cal.Rptr. 154]: "Under the provisions of [§ 31725], the employer is entitled to secure judicial review of a decision denying an employee retirement because the retirement board, as here, is not satisfied from the medical examination and other evidence that the member is incapacitated for the performance of his duties. *If no such action is taken by the employer and the denial becomes final the employer must reinstate the employee*." (*Id.* at p. 696, fn. omitted, italics added.)

■ We conclude Phillips's cause of action for reinstatement under section 31725 did not accrue until his employer's time for action had expired. The decision of the Retirement Board was not final until that time, and there was no enforceable right or obligation prior to the finality of that decision. The sheriff became obligated to reinstate Phillips March 2, 1984. His complaint was timely filed March 2, 1987.

PART III

*Application of Section 31725*

In *McGriff* v. *County of Los Angeles* (1973) 33 Cal.App.3d 394 [109 Cal.Rptr. 186], because of a medical incapacity McGriff lost her job pursuant to a local civil service rule which provided:

" 'Whenever, upon re-evaluation, an employee who has previously qualified is found to be unable to perform the duties of his position satisfactorily, due to a medical incapacity of a continuing nature . . . (c) If there is no suitable position in which the employee can perform satisfactorily, the appointing authority may release the employee, subject to the applicable provisions of Rule 19, said release to be without prejudice as to reemployment should his condition improve.' " (33 Cal.App.3d at p. 395.)

The retirement board denied McGriff's application for disability because she was not permanently disabled from performing the duties of her posi-

tion. (33 Cal.App.3d at p. 396.) Her employer was notified of the retirement board's decision and of the provisions of section 31725. Her employer refused to reinstate her. She petitioned for a peremptory writ of mandate to order reinstatement retroactive to the date of her release. The trial court issued the writ, finding section 31725 applied.

The *McGriff* court rejected the employer's contention that section 31725 was inconsistent with and superseded by the local civil service rules which provided for the release of an employee with a medical incapacity without prejudice to reemployment when the condition improves. The court concluded the County Employees' Retirement Law of 1937, in which section 31725 was found, had been adopted by the County of Los Angeles after the local civil service rules. Based upon the rule that a later specific statute controls over an earlier general statute, the court held section 31725 was controlling. (33 Cal.App.3d at p. 399.) The court noted its holding implemented the intent of the Legislature: "According to the Report of the Assembly Committee on Public Employment and Retirement contained in volume 1 Appendix to Journal of the Assembly (Reg. Sess. 1970) pages 11-13, *the purpose of amending the Retirement Act was to eliminate severe financial consequences to an employee resulting from inconsistent decisions between an employer and the Retirement Board as to whether a particular employee is incapacitated and unable to perform the duties of his position. . . .*

"The committee concluded 'Thus, to remedy this problem, which . . . is virtually a matter of life and death for the very few individuals involved each year, the Public Employees' Retirement System should be given authority . . . to mandate reinstatement of an individual—upon a finding of a lack of disability—but that the employing agency have the right to appeal to the courts.'

"The committee continued: 'Such a method provides a system which involves only two administrative or judicial proceedings instead of three,' since the employee does not have to sue in court on a writ to secure an order to reemploy or an order to pay the disability allowance." (*McGriff* v. *County of Los Angeles, supra,* 33 Cal.App.3d at. pp. 399-400, italics added.)

Ten years after *McGriff, Leili* v. *County of Los Angeles* (1983) 148 Cal.App.3d 985 [196 Cal.Rptr. 427] also dealt with section 31725. The county fire department removed Leili from active duty after the department determined that work restrictions resulting from a work-related injury were incompatible with his job as a fire fighter. His application for disability retirement was denied based upon a finding that he was not disabled, and he

returned to active duty four months later. He filed a writ petition after the county refused his demand for payment of his full salary retroactive to the date on which the county removed him from active duty. The trial court denied the writ, and Leili appealed.

The appellate court held section 31725 entitled Leili to retroactive reinstatement effective from the date the county removed him from active duty:

"Following the decisions of the county fire department and the county board of retirement, appellant found himself in a powerless position: the county fire department had determined that he was unable to work because of his work restrictions and the retirement board had determined that he was not entitled to a disability retirement.

"The Legislature recognized the unfairness of such a situation when it enacted section 31725 of the Government Code. That section, which is part of the disability retirement article of the county employees retirement act, provides that if an employee, who has been terminated from his employment because of physical incapacity, is later found not to be disabled by the retirement board, he must be reinstated to employment. . . .

"In 1974, the Attorney General reached a similar conclusion with respect to provisions of the Public Employees Retirement System: an employer cannot terminate an employee for medical reasons after the Public Employee Retirement System has denied disability to the employee upon a finding that he is able to perform the duties of his position. (57 Ops.Cal.Atty.Gen. 86 (1974).)" (*Leili* v. *County of Los Angeles, supra,* 148 Cal.App.3d at pp. 987-988.) The *Leili* court found the case before it to be governed by the holding of *McGriff.* (148 Cal.App.3d at p. 989.)

■ The County contends Phillips's circumstances are factually and legally distinguishable from both *McGriff* and *Leili.* It asserts section 31725 applies only when an employee has been dismissed by an employer, but not when an employee voluntarily remains on medical leave of absence. The County notes in *McGriff* the employer released the employee without prejudice to reemployment, and in *Leili* the employer ordered the employee's removal from active duty. Phillips, on the other hand, voluntarily placed himself on temporary medical leave of absence.

It is undisputed the County never formally terminated Phillips nor did the sheriff formally remove him from active duty. Phillips's physicians recommended a medical leave of absence and suggested he seek disability retirement. Upon the denial of his application for benefits, he was candid with Sheriff McKinney. He advised McKinney he did not believe he was

capable of performing the duties of a deputy sheriff and he did not believe his physicians would release him to return to active duty. He nevertheless chose to seek reinstatement rather than challenge the Retirement Board's decision. McKinney refused to reinstate him and told him he would be returned to active duty upon obtaining a medical release from a Fresno County medical examiner. The County Counsel told him he would be returned to active duty upon obtaining a release from his therapist.

The trial court concluded Phillips had been "dismissed for disability" within the meaning of section 31725:

"Sheriff McKinney's refusal, due to petitioner's physical and mental condition, to reinstate petitioner after the February 3, 1984, letter makes it clear at least at that time that petitioner was dismissed for disability, regardless of the technical reason for his not working prior to that time, and regardless of how his status was characterized."

Neither *McGriff* nor *Leili* directly addresses the meaning of the word "dismissed" in the context of section 31725—both cases assume the employee had been dismissed. Nor is a statutory definition provided in the County Employees' Retirement Law of 1937. The crucial question is whether the section encompasses only those circumstances in which employment has been expressly terminated by the employer.

Given this ambiguity, we turn to rules of statutory construction. (*People* v. *McCaskey* (1985) 170 Cal.App.3d 411, 415 [216 Cal.Rptr. 54].) ▮ Section 31725 is a remedial statute. Its purpose is to eliminate severe financial consequences to an employee resulting from inconsistent decisions between an employer and the retirement board which leave the employee without retirement income and without income from a job. (*McGriff* v. *County of Los Angeles, supra*, 33 Cal.App.3d at p. 399.) ▮ "Remedial statutes are to be construed to promote their purposes and protect persons within their purview. Relief will be granted unless clearly forbidden by statute. [Citations.] The statute will. be construed when its meaning is doubtful so as to suppress the mischief at which it is directed, to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy. [Citations.]" (*Booth* v. *Robinson* (1983) 147 Cal.App.3d 371, 378 [195 Cal.Rptr. 130].)

Section 31725 attempts to resolve the problem of employees being caught between inconsistent decisions and left without income. (*Leili* v. *County of Los Angeles, supra*, 148 Cal.App.3d at pp. 987-988.) Inconsistent decisions

left Phillips in the same dilemma. The Retirement Board denied his application for disability retirement, and the sheriff denied his request for reinstatement.

Furthermore, section 31722 authorizes an employee to apply for disability "while the member is in service, within four months after his discontinuance of service, or while from the date of discontinuance of service to the time of the application he is continuously physically or mentally incapacitated to perform his duties." "Discontinuance of service" was construed in *Weissman* v. *Los Angeles County Retirement Assn.* (1989) 211 Cal.App.3d 40 [259 Cal.Rptr. 124] to mean the employee has ceased to work for a salary from which deductions are made. (*Id*. at p. 46.) Eligibility for disability retirement benefits does not turn upon whether the employer has dismissed the employee for disability or whether the employee has voluntarily ceased work because of disability. ▋ Likewise, availability of the remedy provided by section 31725 does not depend upon whether the employee has been forced by the employer to cease work because of a disability or has voluntarily stopped working for that reason.

The County contends Phillips's situation must be distinguished from *Leili* and *McGriff* because he was not ready and willing to return to work. The letter from Phillips's attorney requesting reinstatement conceded he and his psychologist believed his physical and mental condition prevented him from returning to active duty. Phillips admitted to Sheriff McKinney he did not believe he was capable of performing the duties of deputy sheriff and he did not believe his physicians would change their opinions.

Logically, a disability which led an employee to apply for disability retirement in the first instance will not instantly disappear upon a retirement board's finding the employee is not incapacitated from performing the duties of the job in question. There is no language in section 31725 which limits its application to those employees who are ready and willing to return to work or which conditions reinstatement upon the employer's finding the employee capable of performing the job.

Phillips concedes the decision of the Retirement Board left him with no choice but to demand reinstatement. ▋ While he could have sought judicial review of the Retirement Board's decision, the clear intent of section 31725 is to relieve the employee of the financial burden of litigation and to place the financial burden on the employer in order to bring about serious attempts between the agencies to resolve any disagreement regarding the employee's disability. (*McGriff* v. *County of Los Angeles, supra*, 33 Cal.App.3d at p. 400.)

The County contends there is no inconsistency between the Retirement Board's decision denying disability retirement and the sheriff's decision denying immediate reinstatement. The County correctly notes the Retirement Board determines whether the employee suffers from *permanent* incapacity. (§ 31725.) Therefore, the employer is not precluded from denying immediate reinstatement if the employer determines the employee suffers from *temporary* incapacity to perform the job.

The County urges the sheriff cannot be compelled to reinstate an employee to active duty as a deputy sheriff unless the employee meets the minimum standards for public officers as set forth in section 1031. In order to meet the minimum standards a public officer must, inter alia:

"Be found to be free from any physical, emotional, or mental condition which might adversely affect the exercise of the powers of a peace officer. Physical condition shall be evaluated by a licensed physician and surgeon. Emotional and mental condition shall be evaluated by a licensed physician and surgeon or by a licensed psychologist who has a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders." (§ 1031, subd. (f).)

Section 31725 does not except from mandatory reinstatement those employees who are not permanently disabled according to a retirement board, but who are not presently ready to return to work according to the employer. Nor does it appear from the legislative history that the Legislature intended such an exception. To provide for such an exception, the Legislature could have included language to that effect. (*Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 650-651 [334 P.2d 991].) We must assume the Legislature " 'knew what it was saying and meant what it said.' " (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].)

We recognize the sheriff has the ultimate authority and responsibility to determine whether a deputy is fit to engage in active duty. Clearly a person who suffers from a physical, emotional or mental disability should not be forced to perform the strenuous and dangerous duties of a deputy sheriff. Section 31725 does not mandate reinstatement to active duty status. The language and legislative intent reflect the purpose of the statute is to mandate reinstatement to paid status.

Furthermore if, as it appears from this record, Sheriff McKinney believed Phillips was not physically or mentally capable of performing the job of a deputy sheriff, his recourse was by way of a petition for judicial review of the Retirement Board's decision. Having failed to seek judicial review of the

Retirement Board's decision, McKinney was compelled to reinstate Phillips to employment.

The employer cannot deny disability retirement on the basis of there being no disability and then claim disability in order to deny employment income. If the employer and Retirement Board do not agree that the employee is entitled to disability retirement, the employer's recourse is to seek judicial review of the Retirement Board's decision. If review is not pursued, the employee must be reinstated. Section 31725 recognizes no middle ground.

PART IV*

*Duty to Mitigate Damages*

. . . . . . . . . . . . . . . . . . . . .

DISPOSITION

We affirm the judgment and award costs on appeal to respondents.

Dibiaso, J., and Vartabedian, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 13, 1991.

---

\* See footnote, *ante*, page 1240.