Filed 4/2/24  Zagaris v. Farmers Insurance Group Federal Credit Union CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KAY ZAGARIS et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>FARMERS INSURANCE GROUP FEDERAL CREDIT UNION,<br><br>  Defendant and Respondent. | F084758<br><br>(Super. Ct. No. CV-20-001252)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  John R. Mayne, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth and Todd W. Baxter for Plaintiffs and Appellants.

Clyde & CO US, Douglas J. Collodel; Weintraub Zolkin Talerico & Selth and James R. Selth for Defendant and Respondent.

-ooOoo-

Appellants, Kay Zagaris (Kay) and Neal Groesbeck (Neal),[1] appeal after the trial court sustained respondent's, Farmers Insurance Group Federal Credit Union (the Credit Union), demurrer and dismissed three causes of action asserted against the Credit Union. Appellants contend they have viable causes of action against the Credit Union arising out of a trust dispute between appellants and Bette Groesbeck (Bette). Bette is appellants' father's, Bernard Groesbeck (Ben), second wife. Ultimately, we agree that the trial court erred in dismissing at least one cause of action on demurrer and therefore reverse the trial court's order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

As this case was decided on a demurrer, the relevant facts come from the operative pleading, appellants' second amended complaint. This complaint was filed after an action originally filed against Ben was consolidated with an action against Kay that had been filed by the Credit Union. In the first amended complaint—filed prior to consolidation—the Credit Union was added as a defendant under a cause of action alleging it assisted in financial elder abuse conducted by Bette. After consolidation and a demurrer to the first amended complaint that was sustained with leave to amend regarding claims against the Credit Union, the second amended complaint (the complaint) dropped the elder abuse claim but added three new causes of action, which we discuss below. The complaint also contains claims against both Bette and the Credit Union. As the claims against Bette and the counter claims against Kay were voluntarily dismissed to effectuate this appeal, we do not discuss them in detail.

The complaint begins with a recitation of general background facts purportedly relating to all causes of action. The trust in this case was originally created by Ben and his first wife, Elsie Groesbeck, in 1993. When Elsie died in 1994, the complaint

---

[1] We refer to individuals by their first name for clarity, as several parties share the same last name.

contends Ben and Elsie's assets were divided under the general trust into an exemption trust and a survivor's trust. The exemption trust was purportedly designed so it was irrevocable and provided Ben with income for the rest of his life, before being split between Kay and Neal.

Ben later met Bette, and the two married in 1997. Both had substantial assets prior to marriage and allegedly sought to maintain their assets separately throughout their marriage.

In 2017, Ben replaced Kay as the successor trustee to the survivor's trust with Bette. At the same time, he granted Bette a life estate in their personal residence. In 2019, Ben suffered a stroke, and his health began to decline. This decline in health exacerbated existing problems in the family and allegedly led to serious conflicts between Ben, Kay, and Bette regarding Ben's care. The complaint alleges that during this time, Bette began taking advantage of Ben, including by diverting Ben's assets to Bette's personal use.

More directly relevant to the claims brought against the Credit Union, the relevant trust accounts were established with the Credit Union. Ben was the original trustee and Kay and Neal were the original beneficiaries.

The complaint alleges Ben became physically and mentally impaired after his 2019 stroke, such that he was locked out of his online account multiple times and required the Credit Union's assistance to use his account. In addition, the Credit Union's records show Ben gave his password and other confidential information to an unknown third party in July 2019.

Then, in March 2020, a Credit Union employee purposefully blocked an attempt by Ben to transfer $77,000 from the exemption trust to Ben's checking account because Ben "was being coached to make the transfer." This action was documented by the employee. By April 2020, the complaint alleges Ben required assistance to complete any

3.

transaction because he could hardly see, could no longer read, could not recall passwords, could not use a computer, and suffered from dementia.

At that same time, in April 2020, the complaint alleges, "Bette first made contact with [the Credit Union] to gain control over the [exemption and survivor's trusts]." The complaint states that Bette "informed Debra Whitfield a [Credit Union employee], that Ben was incapacitated, and she was his wife who wanted to disinherit Plaintiff Kay Zagaris and gain control over the accounts as Trustee."

According to the complaint, Whitfield agreed to help and "painstakingly directed" Bette on how to complete beneficiary forms to delete Kay. In addition, the complaint asserts that Whitfield and others at the Credit Union created a new system for modifications to trust accounts that relied on electronic signatures rather than physical signatures to effectuate changes and used this system for the first time to make Bette's changes. This system allowed Bette's daughter from a different marriage to create an e-mail account on Ben's behalf and sign the documents for him. These documents installed Bette as the trustee for all of the trust assets and named her as the beneficiary for those assets. They were purportedly signed by Ben between April 7 and May 2, 2020.

Ben died on June 22, 2020. In October 2020, Neal went to the Credit Union in order to obtain the assets due to him and Kay as beneficiaries. At the time, the Credit Union issued checks to both Neal and Kay. Neal and Kay were both members at the Credit Union aside from their interests in the trust assets. However, a problem with Neal's check meant it couldn't be cashed and he had to return to the Credit Union multiple times to obtain a proper check.

On the third of these visits, Neal was met by a "Branch Lead Counselor" he had previous interactions with and with whom "there was obvious tension" due to prior interactions. The Credit Union refused to issue a corrected check and froze the remaining assets in the trust accounts. Branch Support Operations Manager Myra Morales sent an internal e-mail the same day the accounts were frozen to multiple people who were

4.

involved with the disputed withdrawals. In that e-mail, Morales wrote, "Neal lied; he is not a successor trustee."

Ultimately, the Credit Union conducted some form of an investigation and determined internally that Bette was the proper beneficiary and successor trustee. It released the remaining funds to Bette and filed a lawsuit to recover those funds that had been issued to Kay.

Appellants eventually sued to recover what they contend are their trust assets as the proper beneficiaries and successor trustees to the relevant accounts. Three causes of action were brought against the Credit Union, labeled the sixth through the eighth causes of action in the complaint. The sixth cause of action alleges the Credit Union was liable for aiding and abetting fraud and breach of fiduciary duty.[2] The seventh cause of action alleges the Credit Union was negligent in its actions. And the eighth cause of action alleges the Credit Union defamed Neal in the aforementioned e-mail.

The Credit Union demurred to the three causes of action brought against it, and the trial court sustained the demurrer without leave to amend. The parties then dismissed the remaining claims without prejudice, and this timely appeal followed.

## DISCUSSION

The three causes of action asserted against the Credit Union all depend on different factual and legal principles. Accordingly, we first consider our general standard of review on an appeal from an order sustaining a demurrer before specifically discussing each of the three causes of action. We conclude by considering whether leave to amend was required on any cause of action properly subject to demurrer.

---

[2]     Notably, the fourth cause of action alleged against Bette claims a breach of fiduciary duty based on Bette acting "against Neal and Kay's interest in connection with the trust when she changed the beneficiary of the trust to herself and excluded Kay from the trust" while making "Neal a residual beneficiary after Bette."

## General Standard of Review and Applicable Law

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) "When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.) We may also consider matters subject to judicial notice and will affirm the judgment if any ground for the demurrer is well taken. (*Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924.)

## Sixth Cause of Action—Aiding and Abetting Fraud and Breach of Fiduciary Duty

Appellants sixth cause of action asserts that the Credit Union's conduct aided and abetted fraud and breach of fiduciary duty on the part of Bette. In its demurrer and again on appeal, the Credit Union contends the facts alleged do not and cannot show that the Credit Union had actual knowledge it was assisting in either fraud or breach of fiduciary duty. We do not agree.

### Applicable Law

"California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. ' "Liability may … be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." ' " (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th

6.

1138, 1144.)  Knowledge is the critical element in the claim, as even ordinary business transactions can constitute substantial assistance.  (*Id*. at p. 1145.)

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted."  (*Casey v. U.S. Bank Nat. Assn.*, *supra*, 127 Cal.App.4th at p. 1145.)  Accordingly, one alleging such a tort must be able to allege that the aider and abettor had actual knowledge of a specific primary violation of the law—not just generalized concerns that conduct might be improper.  (*Id*. at p. 1148.)  Thus, to test the complaint, one must first identify the underlying tortious conduct or breach of fiduciary duty allegedly aided and abetted.  (*Id*. at p. 1149.)

*Appellants Have Properly Stated an Aiding and Abetting Cause of Action*

The complaint contains a wide-ranging set of allegations against Bette and the Credit Union.  However, within that set of allegations exists a proper indication of the underlying offenses alleged and of the Credit Union's actual knowledge of those wrongs.  Specifically, the complaint and the documents submitted show the Credit Union knew Ben was the current trustee of the disputed trust accounts both because he was the one attempting to move money from the accounts and because his signature was required to change the beneficiaries and to make Bette the designated trustee on the account.  The complaint then alleges that the Credit Union knew Ben was being improperly coached as of March 20, 2020, when a Credit Union employee "documented fraud and undue influence in [Ben]'s home" after refusing a request to transfer $77,000 because Ben "was being coached to make the transfer."  The allegations continue that the next month, in April 2020, Bette worked with the Credit Union to execute several documents on behalf of Ben that added Bette as the active trustee of the Trust and that disinherited Kay.  As part of these allegations, the complaint specifically alleges that Bette "informed Debra Whitfield a [Credit Union employee], that Ben was incapacitated, and she was his wife

7.

who wanted to disinherit Plaintiff Kay Zagaris and gain control over the accounts as Trustee."

The first underlying primary wrong alleged is fraudulent conduct on behalf of a nontrustee to gain control of the trust of an incapacitated trustee in order to disinherit existing beneficiaries.[3] The Credit Union was made aware of this conduct because, it is alleged, Bette told the Credit Union Ben was incapacitated and that she wanted to be named trustee to disinherit a beneficiary. Any alleged directives for such actions, given by the incapacitated Ben, would likely be either invalid or fraudulent in nature. And an unsupported claim Ben is incapacitated, warranting removal as trustee shortly after Ben was prohibited from making a massive transfer on claims he was being improperly coached, clearly indicates potential fraud. Finally, after learning Ben was incapacitated, the Credit Union still drafted documents at Bette's request for Ben's signature and accepted Ben's electronic signature on those documents—further indicating it knew of the fraud.

While the truth of such a direct admission by Bette to the Credit Union is certainly going to be heavily contested, at the pleading stage it is sufficient to indicate the Credit Union knew of the underlying wrong of fraud by Bette in claiming she could currently be designated by Ben as the trustee. (See *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990 ["The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."].)

---

[3] We note the trial court appeared to conclude from the pleadings that Bette was already the trustee when she acted. We do not agree that such a conclusion is mandated by the pleadings as drafted. However, even if true, the primary wrong would still be properly pleaded as the documents submitted identifying Bette as trustee in 2020 were electronically signed by Ben after Bette informed the Credit Union he was incapacitated. Even if already installed as trustee, the pleadings adequately disclose a claim the Credit Union knew Bette was committing fraud in submitting documents signed by one she told the Credit Union was incapacitated.

The second underlying primary wrong alleged is a planned breach of fiduciary duty by a trustee acting to the detriment of the beneficiaries of an irrevocable trust and contrary to the duty owed to the settlor of a revocable trust. (See *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1066, 1071 [explaining that trustee owed duty to settlor of revocable trust while competent and that beneficiaries obtain standing to sue after death of settlor if that duty is breached]; *McMillin v. Eare* (2021) 70 Cal.App.5th 893, 912 ["A trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law. [Citation.] A trustee also owes a duty of loyalty in that he [or she] has a duty to administer the trust solely in the interest of the beneficiaries; this duty is frequently invoked as protection against creating conflicts between a trustee's fiduciary duties and personal interests."].) Again, the core factual assertion relevant to this is Bette's alleged confession that Ben was incapacitated and that she wished to become trustee to disinherit Kay. To the extent the trust was irrevocable— either due to the death of Ben's first wife or Ben's incapacitation—such a change by a trustee would violate the duty of loyalty to the existing beneficiaries. And to the extent the trust was revocable, Ben's incapacity meant that any actions taken after the change in trustee would violate the trustee's duty to act in conformity with the settlor's intent.

With respect to both allegations of an underlying primary wrong, the complaint also adequately alleges the Credit Union supported Bette's efforts by working with her to make the changes after becoming aware of her tortious intent. Indeed, the complaint goes further, claiming the Credit Union initiated unique procedures that had never been completed electronically before in order to ensure Ben did not have to physically sign any documents making the requested changes. As such, the complaint adequately states a cause of action for aiding and abetting fraud or breach of fiduciary duty, and the trial court erred in sustaining the demurrer.

The Credit Union's arguments in opposition to finding it had the relevant knowledge and intent to assist focus on assertions the facts show the Credit Union was

9.

operating under an assumption that Bette was the current trustee and could properly request the changes made or that the trusts in question were not as immutable as the pleadings suggest. Were the facts focused on by the Credit Union the exclusive facts pleaded, its argument might carry the day. However, in none of the Credit Union's arguments does it tackle how it would lack knowledge of Bette's tortious activities after being directly told that Ben was incapacitated, that Bette wanted to become trustee, and that Bette wanted to disinherit a beneficiary. Further, the Credit Union's arguments do not explain why, if it believed Bette was the correct trustee at the time because Ben was incapacitated, it required Ben's signature to make changes to the relevant accounts. Taking the pleadings in the light most favorable to appellants, the facts alleged are sufficient to support the sixth cause of action.

## *Seventh Cause of Action—Negligence*

Appellants' seventh cause of action alleges negligence against the Credit Union. In the demurrer and on appeal, the Credit Union contends no facts can support a negligence cause of action because the Credit Union owes no duty to appellants. We agree.

### *Applicable Law*

"There is a wealth of case law defining the duties a bank owes to account holders. Those duties do not include 'policing' other depositors' accounts for fraud." (*Kurtz-Ahlers, LLC v. Bank of America, N.A.* (2020) 48 Cal.App.5th 952, 956 (*Kurtz-Ahlers*).) The court in *Kurtz-Ahlers* provides a detailed summary of this case law, including a discussion explaining that the duty owed to depositors is contractual in nature. This limited duty is applied in a long line of cases confirming that banks owe no duty to those that are not deposit holders when it comes to monitoring account activities. (*Id*. at pp. 956–957.) The lone existing exception to this duty comes in a case limited primarily to its facts that holds a bank cannot ignore, and must make a minimal inquiry regarding, large checks written to the bank that are being deposited into an individual's personal

10.

account.  (See *id*. at p. 957, discussing *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671 (plur. opn. of Mosk, J.) (*Sun 'n Sand*).)

*The Credit Union Owed No Duty to Appellants to Prevent Fraudulent Conduct*

In the course of critiquing the trial court's order, appellants recognize and reference cases holding banks have no duty to police accounts, even when those accounts are fiduciary or trust accounts.  (See *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 537 (*Chazen*).)  However, appellants contend those cases are "clearly distinguishable" because appellants were "account holders, successor trustees on one of the trusts, and beneficiaries of the two trusts before being disinherited."  According to appellants, failing to acknowledge a duty to prevent their fraudulent disinheriting because they were fraudulently disinherited is improperly circular reasoning.

We do not agree.  For appellants' claim of circular reasoning to stand, one must assume that a duty was owed to appellants prior to their disinheriting.  Thus, appellants would need to identify a case or principle by which a non-signatory to a trust account would be owed the same or similar duty owed to the signatory on the account. Appellants have cited no such case or principle, and the court has found none.  Rather, as explained in *Kurtz-Ahlers* and *Chazen*, a bank's duty is only contractual in nature and only extends to the person that contracted with the bank regarding the relevant account. (*Chazen*, *supra*, 61 Cal.App.4th at p. 537.)  Thus, appellants' status as contractual parties to different accounts, as successor trustees on the underlying trusts, and as beneficiaries of the trusts, are legally insufficient bases to claim a duty owed by the Credit Union to appellants regarding an account contractually bound to a third party—even if that third party is related to appellants.

We further reject appellants' argument that the facts of this case fall within the limited exception requiring minimal inquiry contained in *Sun 'n Sand* and as applied in *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541.  Both of those cases involved situations where a bank accepted a check made out to one payee but deposited

11.

into a different payee's account without objective indicia showing the transaction was proper. As *Sun 'n Sand* explained, "an attempt by a third party to divert the proceeds of a check drawn payable to the order of a bank to the benefit of one other than the drawer or drawee suggests a possible misappropriation" that creates a foreseeable risk of fraud that a bank depositing the check ignores at its own peril. (*Sun 'n Sand*, *supra*, 21 Cal.3d at pp. 694–695.) The risk of harm is so foreseeable in such circumstances that it definitely outweighs any impact that additional inquiry would have on the banking system. (*Id*. at p. 695.) No such similar facts exist here which would meet the limited exception defined in *Sun 'n Sand*.

Finally, we see no basis to create such a duty. In this case, the allegations contend the Credit Union was presented with an improper attempt by the account holder to change documents related to their account and that the Credit Union had information sufficient to determine the change was fraudulently induced by the current trustee of the account. While a potential basis exists to hold the Credit Union liable for damage done to the account holder or to hold the trustee liable to those harmed by the fraud, we do not see an exception to the general rule that the Credit Union has no general duty to supervise account activities. Presented with an attempt by the account holder to make changes to their own account, the foreseeability of harm to others is insufficient to warrant a general duty of care and the burden on the banking system in scrutinizing all changes made by elderly or otherwise at-risk account holders to their accounts is too great to justify such a duty even if such harm was reasonably foreseeable. (See *Sun 'n Sand*, *supra*, 21 Cal.3d at p. 695 [describing policy considerations balanced when imposing a duty to exercise reasonable care in given circumstances].)

The trial court therefore correctly sustained the demurrer on the seventh cause of action.

### *Eighth Cause of Action—Defamation*

Appellants' eighth cause of action alleges defamation by the Credit Union based on an internal e-mail sent to employees. The Credit Union demurred on the ground the facts alleged demonstrate as a matter of law that the common interest privilege applied and that there was no allegation of malice. On appeal, appellants contend the alleged defamatory communication does not fall within the privilege both because it was not made in the course of the relevant business relationship and because the facts demonstrate malice. The Credit Union contends the factual allegations regarding malice are insufficient to overcome the privilege and that the identified communication is true, regardless.

*Applicable Law*

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)

The common interest privilege, as set forth in Civil Code section 47, subdivision (c), states that a privileged communication is one made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." The qualified privilege is recognized where the common interest is "something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business or similar relationship." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287.)

Malice, in the defamation context, is "a reckless or wanton disregard for the truth." (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 740.) It cannot be presumed from the fact of the communication itself; a claim of malice must be supported by evidence. (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 354.) Further, the failure to

13.

conduct a thorough investigation, alone, is insufficient to demonstrate malice. Rather, the facts alleged must show something more, for example, the failure to investigate was in purposeful avoidance of the truth or because there was no conflict in the available evidence showing falsity. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 685.)

*The Common Interest Exception Applies Under the Facts as Pleaded*

The facts pleaded regarding the challenged communication make clear that the common interest exception applies in this case. Appellants allege that one Credit Union employee e-mailed another Credit Union employee in a manner allowing several other Credit Union employees that were working on or aware of various aspects of the withdrawal dispute to see the communication. Although the communication is alleged to be defamatory, it also relates clearly to the ongoing dispute regarding who is a successor trustee to the relevant account or accounts. While appellant attempts to label the communication as mere "gossip," this label does nothing to dispel the specific facts alleged showing each recipient was an employee of the Credit Union and that the communication was related to ongoing activities at the Credit Union. These facts satisfy the statutory requirement that the relationship between those communicating affords reasonable grounds for supposing the communication innocent. Even under the most favorable reading to appellants, the communication falls generally within the common interest exception.

Appellants seek to overcome the general applicability by arguing they properly pleaded malice. Appellants recognize that mere conclusions are insufficient to properly plead malice. Yet, appellants argue an allegation that one failed "to use reasonable care to determine truth or falsity of the statement before it was made" is "sufficient for alleging malice for purposes of a demurrer." Appellants then point to an assertion there was "obvious tension" between Neal and one of the employees that heard the communication and contend the facts permit an inference that "Morales had grounds to

14.

believe Neal, but consciously chose not to, instead, defaming him with her malicious, and reckless disregard for the truth .…"

We find none of these factual allegations or arguments sufficient to demonstrate appellants properly pleaded malice in this case. The lack of a meaningful investigation is insufficient to demonstrate malice. (*Balla v. Hall*, *supra*, 59 Cal.App.5th at p. 685.) And the facts allegedly showing more than a mere lack of investigation are neither specific nor directly tied to the making of the communication. That Neal had some "obvious tension" with the hearer of the communication sheds no light on the motive of the speaker. Further, Neal's attempt to collect as a successor trustee while potentially supporting his claim of legitimacy does nothing to eliminate the contradictory evidence that Neal had been removed as successor trustee. Appellants' allegations that such a removal was fraudulent do not indicate the communication made by Morales was malicious, as no facts pleaded indicate Morales knew of the alleged fraud, participated in it, or otherwise wished to support it. Absent additional factual support, the pleadings are mere conclusions that do not permit even an inference that Morales's e-mail statement was made with malice and therefore falls outside of the common interest privilege.

The trial court thus correctly sustained the demurrer on the eighth cause of action.[4]

### ***Leave to Amend***

The trial court denied appellants an opportunity to amend the complaint. As this court has upheld the demurrer with respect to the seventh and eighth causes of action, we next consider whether the denial of leave to amend constituted an abuse of discretion.

---

[4] The Credit Union argues the pleadings do not demonstrate the statement that Neal is a liar to be false. We do not agree. The allegations sufficiently support the inference that Neal was telling the truth regarding his status due to the fraud allegedly perpetrated to remove him. We take no position, however, on the veracity of the underlying statements.

15.

*Applicable Law*

"[A] reviewing court must determine whether there is a reasonable possibility that a pleading as to which a demurrer has been sustained without leave to amend is capable of amendment to cure the defect. And it is the plaintiff who bears the burden of establishing that it is." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1048.) We review the trial court's decision for an abuse of discretion. (*Id*. at p. 1035.)

" '[F]or an original complaint, regardless of whether the plaintiff has requested leave to amend, it has long been the rule that a trial court's denial of leave to amend constitutes an abuse of discretion unless the complaint "shows on its face that it is incapable of amendment." ' " (*Tarrar Enterprises, Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 688.) " ' "Denial of leave to amend [an initial complaint] is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained." ' " (*Id*. at p. 689.)

*Leave to Amend Was Properly Denied*

Appellants generally argue that they could have added multiple facts to their allegations based on discovery that had taken place. In addition, having been granted leave to amend the first amended complaint to add new claims, appellants contend that the complaint was technically new and should be treated as an initial complaint rather than an amended complaint for purposes of determining whether the trial court abused its discretion.

With respect to the seventh cause of action, even considering the pleading in the context of an original complaint, we see no abuse of discretion on the part of the trial court. Appellants' cause of action relies on a claim that the Credit Union owed a general duty to Kay and Neal with respect to an account under which they were only beneficiaries. As discussed above, the law does not impose such a duty. It is thus

conclusively apparent that there is no possibility of alleging facts under a negligence theory for which recovery can be obtained in this case.

With respect to the eighth cause of action, we find appellants have failed to demonstrate they could amend to state a cause of action. As discussed above, the facts pleaded demonstrate that the common interest privilege is applicable to the e-mail supporting the defamation claim. Thus, to state a claim, appellants must be able to allege malice on the part of the employee who wrote the e-mail. Appellants allege vaguely that there were issues with other employees at the Credit Union which caused tension, but in no portion of the complaint do appellants indicate those same concerns apply to the employee that wrote the disputed e-mail. Further, on appeal, appellants only vaguely allege that discovery they undertook could be beneficial to their claims, and their arguments are made exclusively to the sixth and seventh causes of action. Even treating the complaint as if it were the original, appellants' failure to identify any factual basis for amending the eighth cause of action supports the trial court's decision not to allow further amendment.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Costs are awarded to appellants.


HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


DE SANTOS, J.

17.